UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES


   -v-                                                    No.   23-CR-407-LTS

AHMED ALTOREI, SAMUEL BAUTISTA,
and RONALD CORADIN,


     Defendants.

-------------------------------------------------------x


MEMORANDUM OPINION AND ORDER

     Before the Court is Defendant Samuel Bautista's motion seeking: (1) compelled disclosure of any and all acts that the Government would seek to introduce pursuant to Federal Rule of Evidence 404(b); (2) a bill of particulars; (3) compelled disclosure of Brady and Giglio material; (4) striking as surplusage certain portions of the operative superseding indictment (docket entry no. 20 ("S1 Indictment" or "Superseding Indictment")); (5) severance of counts and defendants; (6) preclusion of the use of lay opinion identification testimony related to surveillance video; and (7) compelled production of Jencks Act material at least 30 days prior to trial.  (Docket entry no. 69 (the "Motion").)  Also before the Court is the motion of Defendant Ahmed Altorei to join in Mr. Bautista's requests for relief.  (Docket entry nos. 72, 76.)

     The Court has reviewed thoroughly the parties' submissions and arguments, and, for the following reasons, Mr. Altorei's motion to join in Mr. Bautista's Motion is granted, and Mr. Bautista's Motion is denied in its entirety.

BACKGROUND

The following facts are drawn from the Superseding Indictment and the parties' submissions.  On or about October 5, 2023, a grand jury returned the operative Superseding Indictment against the three defendants in this case, Mr. Altorei, Mr. Bautista, and Mr. Ronald Coradin.  (Docket entry no. 74 ("Gov't Mem.") at 1; S1 Indictment.)  The Government principally charges all three defendants with participating in a racketeering conspiracy that involved the trafficking of cocaine and cocaine base or "crack" and the commission of crimes of violence, in violation of 18 U.S.C. section 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (S1 Indictment ¶¶ 1-10.)  The other charges against the defendants are as follows:

- **Count 2 (Altorei)**: Maiming, attempted murder, and assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. sections 1959(a)(2), (a)(3), (a)(5), and 2;
- **Count 3 (Altorei, Bautista)**: Attempted murder and assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. sections 1959(a)(3), (a)(5), and 2;
- **Count 4 (Altorei, Bautista)**: Use of a firearm for attempted murder and assault with a dangerous weapon, in violation of 18 U.S.C. sections 924(c)(1)(A)(i), (ii), and (iii), and 2;
- **Count 5 (Altorei, Bautista, Coradin)**: Conspiracy to distribute narcotics, in violation of 21 USC sections 846 and 841(b)(1)(A);
- **Count 6 (Altorei, Bautista, Coradin)**: Firearms use, carrying, and possession, in violation of 18 U.S.C. sections 924(c)(1)(A)(i), (ii), and (iii), and 2; and
- **Count 7 (Altorei, Bautista)**: Possession of ammunition after a felony conviction, in violation of 18 U.S.C. sections 922(g)(1) and 2.

(Id.)

The Superseding Indictment refers to the charged racketeering enterprise as the "2860" gang, named for the building in which the enterprise was allegedly based, 2860 Grand

Concourse in the Bronx, New York.  (Id. ¶¶ 1-2.)  Among the notable predicate acts of racketeering included in the charged racketeering conspiracy—which are also charged as separate offenses in the Superseding Indictment—are Mr. Altorei's alleged use of a knife to cut open the face and to stab the chest of a disfavored 2860 member in October 2018 (id. ¶¶ 11-13), and Mr. Bautista's alleged accidental shooting of an 11-month-old child while attempting to shoot a rival drug trafficker in January 2022 (id. ¶¶14-16).

Mr. Bautista filed the instant Motion on June 12, 2025.  (See Motion.)  His co-defendant, Mr. Altorei, filed his motion to join Mr. Bautista's motion on the same date.[1]  (See docket entry no. 72.)  Mr. Altorei seeks identical relief to that sought by Mr. Bautista, to the extent that any such relief is applicable to the allegations against Mr. Altorei (docket entry no. 73 ("Lance Decl.") at 1-2), and proffered no individualized or additional arguments in seeking to join in Mr. Bautista's Motion.  (See generally docket entry no. 72; Lance Decl.)

## DISCUSSION

The Court addresses the requests for relief by Mr. Altorei and Mr. Bautista (together, the "Defendants") in turn.

## Prior Acts – Federal Rule of Evidence 404(b)

Defendants move for an order directing disclosure of "any and all acts which the Government would seek to introduce against [them] pursuant to Federal Rule of Evidence 404(b)

---

[1]    On June 12, 2025, counsel for Mr. Coradin submitted by email, copied to all counsel, a motion to join Mr. Bautista's Motion and stated his intention to file the motion on the public docket the following morning.  As of the date of this Memorandum Opinion and Order, and despite the Court's request by email, counsel did not file the motion.  The email submission has therefore been disregarded.

in such sufficient and reasonable time that [they] may make a meaningful and intelligent motion in limine to preclude the introduction of such evidence[.]"  (Motion at 1.)  Mr. Bautista additionally moves to preclude the introduction of evidence pertaining to his 2013 narcotics conspiracy conviction in United States v. Bautista, 13 Cr. 867 (PGG), arguing that any such evidence serves no legitimate evidentiary purpose.  (Docket entry no. 71 ("Bautista Mem.") at 6-7.)

Rule 404(b) provides that, in a criminal case, where a prosecutor seeks to introduce evidence of other crimes, wrongs, or bad acts, the Government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it" and that the Government must "do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice."  Fed. R. Evid. 404(b)(3).  "Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case."  Id. advisory committee's note to 1991 amendment. See also, e.g., United States v. Helbrans, 547 F. Supp. 3d 409, 438 (S.D.N.Y. 2021) ("Rule 404(b) . . . sets no minimum time for action by the Government, nor would any time limit be appropriate, because the evidence the Government wishes to offer may change as the proof and potential defenses crystallize." (citations omitted)).

Here, the Government has confirmed that it understands its obligations under Rule 404(b) and will provide the requisite notice "well in advance of trial pursuant to a pretrial schedule determined by the Court[.]" (Gov't Mem. at 7-8.)  The Government further states that, at present, it has no objection to disclosure of any evidence encompassed by Rule 404(b)'s mandate within 30 days of trial.  (Id. at 8 n. 4.)  In light of these representations, and the fact that

trial is scheduled for February 2026, nearly six months from the date of this Memorandum

Opinion and Order, Defendants' request for an order directing the production of Rule 404(b)

information is denied as premature.  See Helbrans, 547 F. Supp. at 438 (denying motion for Rule

404(b) disclosures where no trial date had been set and Defendants had provided "no reason to

disbelieve the Government's stated intention to comply" (gathering similar case law)).

      Mr. Bautista's second Rule 404(b)-related request—to preclude evidence relating

to his 2013 narcotics conspiracy conviction—is also premature, and will be better addressed

closer to trial, e.g., in connection with motion in limine practice.  United States v. Paredes, 176

F. Supp. 2d 183, 186 (S.D.N.Y. 2001) (explaining that the purpose of a motion in limine "is to

allow the trial court to rule in advance of trial on the admissibility and relevance of certain

forecasted evidence" where appropriate (citations omitted)).  In any case, as discussed at length

below, see infra pp. 7-9, the Government represents that it will seek to introduce evidence of the

2013 conviction as direct evidence of the racketeering conspiracy charged in Count One, rather

than as evidence of "other crimes" that falls within the purview of Rule 404(b).  (See Gov't

Mem. at 8); see also United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (explaining

circumstances under which evidence of criminal activity is admissible as direct evidence); Fed R.

Evid. 404(b) advisory committee's note to 2011 amendment (explaining that "other crimes," as

used in Rule 404(b), means "crimes, wrongs, and acts 'other' than those at issue in the case").

This second request is, accordingly, also denied.


Bill of Particulars – Federal Rule of Criminal Procedure 7(f)

      Rule 7(f) provides in pertinent part that: "[t]he court may direct the government to

file a bill of particulars."  Fed. R. Crim. P. 7(f).  A defendant may move for a bill of particulars

"before or within 14 days after arraignment or at a later time if the court permits." Id. "Rule 7(f) . . . permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted). Importantly, "[a]cquisition of evidentiary detail is not the function of the bill of particulars." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation marks and citation omitted).

In determining whether a bill of particulars is warranted, the "important question is whether the information sought is necessary, not whether it is helpful." United States v. Facciolo, 753 F. Supp. 449, 451 (S.D.N.Y. 1991) (citations omitted). Particulars are necessary only where indictment charges are "so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks and citation omitted). "If the information the defendant seeks is provided in the indictment or in some acceptable alternate form, such as discovery or other correspondence, no bill of particulars is required." United States v. Binday, 908 F. Supp. 2d 485, 497 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). With respect to conspiracy charges, "[i]t is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." United States v. Reid, 650 F. Supp. 3d 182, 197 (S.D.N.Y. 2023) (internal quotation marks and citation omitted). Moreover, "[d]etails as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial." Id. (internal quotation marks and citation omitted).

In the instant case, Mr. Bautista asserts that a bill of particulars is necessary because, despite the "substantial" discovery provided (Bautista Mem. at 8), instances of Mr. Bautista's involvement in the charged racketeering and narcotics conspiracies are not "easily discernable."  (Id. at 8-9.)  Mr. Bautista also raises concerns about double jeopardy, noting that he was previously convicted of participating in a narcotics conspiracy conducted at the same location in 2013.  (Id. at 8.)  The Government contends that it has provided Defendants with more than sufficient information to understand the charges against them, prepare a defense, and protect against double jeopardy, such that any further disclosures via a bill of particulars are not necessary.  (Gov't Mem. at 2.)  In particular, the Government points to the Superseding Indictment which, it asserts, "sets forth in considerable detail the contours of the alleged [racketeering] conspiracy, including the principle [sic] means and methods of the conspiracy, the nature of the defendant's criminal conduct, the dates of the defendant's criminal conduct, and the defendant's specific efforts to facilitate the various criminal charges."  (Id. at 5.)  The Government also asserts that the Defendants are on notice that they are charged with selling quantities of cocaine and cocaine base from at least May 2018 through August 2023, and that no more information is required at this stage of the proceedings regarding that charged offense.  (Id. (citing United States v. Calvente, No. S3 12-CR-732-WHP, 2013 WL 4038952, at *2 (S.D.N.Y. July 26, 2013).)  Finally, the Government points to the extensive discovery that it has provided pursuant to Rule 16 regarding the charged racketeering conspiracy, which includes records concerning the January 2022 shooting, and search warrants and their supporting affidavits that describe the charged criminal acts of the Defendants, and asserts that it will, prior to trial, disclose additional materials pursuant to the Jencks Act, 18 U.S.C. § 3500 ("Section 3500"), and

provide a so-called "enterprise" letter further particularizing the allegations in the Superseding

Indictment or the evidence the Government intends to introduce at trial.  (Gov't Mem. at 5-6.)

Turning first to Mr. Bautista's double jeopardy contentions, Mr. Bautista outlines,

but does not clearly articulate, the concern regarding double jeopardy that he asserts necessitates

a bill of particulars.  Mr. Bautista appears to argue that there are double jeopardy implications

because he has been convicted of participation in a 2013 narcotics conspiracy, and the instant

RICO charge includes as predicate racketeering activity allegations of narcotics distribution

during a period that overlapped with the 2013 narcotics conspiracy.  (Docket entry no. 75

("Bautista Reply") at 2-3.)  In other words, Mr. Bautista appears to argue that the Government

may not rely on conduct underlying his prior narcotics conspiracy conviction as predicate

racketeering acts for a subsequent RICO conspiracy without running afoul of the prohibition

against double jeopardy.  (See id. at 3 ("Thus, the instant allegations are alleged to have taken

place at the same location as the older case, with overlapping time frames. And the alleged

racketeering conspiracy somehow pre-dates the alleged narcotics conspiracy, raising questions

about the common purpose of the racketeering enterprise from 2011 to 2018.").)  Courts have,

however, repeatedly rejected such contentions, instead holding that "conduct resulting in prior

convictions [may] be used as predicate acts of racketeering activity to establish subsequent RICO

convictions," United States v. Persico, 832 F.2d 705, 711 (2d Cir. 1987) (internal quotation

marks and citation omitted), at least where, as here, the enterprise activity is alleged to have

persisted beyond the date of the prior, predicate conviction.  See id. (gathering cases from other

circuits); United States v. Scarpa, 913 F.2d 993, 1013 n.8 (2d Cir. 1990).

Moreover, as the Government notes, it has sought to mitigate double jeopardy

concerns regarding the instant narcotics conspiracy charge, Count Five, which forms part of the

basis for the racketeering conspiracy charged in Count One (S1 Indictment ¶¶ 6(b), 8-10), by only charging such conduct from in or about 2018 through August 2023, well after the period encompassed in the 2013 narcotics conspiracy charge of which Mr. Bautista was previously convicted.  (See S1 Indictment ¶ 18; Gov't Mem. at 8 n.5.)  The temporal relationship between the 2013 and current *narcotics* conspiracy charges does not, however, mean that any such conspiratorial conduct in the intervening time period cannot be included as predicate racketeering activity for the *racketeering* conspiracy charged in Count One of the Superseding Indictment, and cannot form part of the common purpose of the enterprise for the entire period charged in Count One—from roughly 2011 through August 2023.  (See Gov't Mem. at 8 n.5 (explaining that, despite the fact that the charged narcotics conspiracy begins in or about 2018, the racketeering conspiracy charged extends back to 2011).)  In view of the foregoing considerations, the confusion that Mr. Bautista asserts stems from the differing time periods charged in the Superseding Indictment does not necessitate clarification by way of a bill of particulars.

Moreover, given the detail provided in the Superseding Indictment, which does list numerous charged acts underlying the racketeering conspiracy, many of which are dated, and the time period underlying the narcotics conspiracy, the undisputed fact that the Government has produced "substantial" discovery (Bautista Mem. at 8), and the Government's commitment to providing even further detail prior to trial, including through the provision of an "enterprise" letter, the Court finds that the Defendants have failed to carry their burden of demonstrating that the detailed information they seek via this request for a bill of particulars would be necessary for their trial preparation, rather than merely helpful.  The request for a bill of particulars is accordingly denied.

Compelled Disclosure of Brady, Giglio, Rule 16, and Jencks Act Material

Brady v. Maryland, 373 U.S. 83 (1963), and the decisions that have built upon it establish that, in order to assure protection of the defendant's constitutional rights to due process and a fair trial, the prosecution (i.e., the Government) has an affirmative duty to seek out and provide to the defense all material evidence that is favorable to the accused and that is known to the Government or to federal, state, and local law enforcement personnel and officers who are or have been involved in the investigation or prosecution of the case.  Strickler v. Greene, 527 U.S. 263, 280-81 (1999); Kyles v. Whitley, 514 U.S. 419, 437 (1995).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  United States v. Bagley, 473 U.S. 667, 682 (1985).

This duty applies to evidence that affirmatively tends to exculpate the defendant, as well as information that impeaches the credibility of the Government's witnesses.  Id. at 676-77 (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).  Even inadmissible evidence may be material if it could lead to the discovery of admissible evidence.  United States v. Mahaffy, 693 F.3d 113, 131 (2d Cir. 2012).  The Government must disclose such evidence to the defense after its existence becomes known to the Government, so as to enable the defense to have an opportunity to make effective use of the evidence in preparing its case and at trial, including a reasonable opportunity to investigate the information.  United States v. Coppa, 267 F.3d 132, 135 (2d. Cir. 2001); Grant v. Alldredge, 498 F.2d 376, 382 & n.7 (2d Cir. 1974).

Federal Rule of Criminal Procedure 16(a) provides for "discovery and inspection of certain information 'upon a defendant's request,' including the defendant's prior statements, the defendant's prior criminal record, documents and objects, reports of examinations and tests, and a summary of any expert witness testimony intended to be used at trial."  United States v.

Rodriguez, No. 19-CR-779-AKH, 2020 WL 5819503, at *11 (S.D.N.Y. Sept. 30, 2020) (quoting Fed. R. Crim. P. 16(a)). "A district court has inherent authority to regulate the nature and timing of such discovery." Id. (citations omitted).

Finally, the Jencks Act, 18 U.S.C. Section 3500, provides that, following direct examination of a Government witness, and on motion of the defendant, the Government must produce any of said witness's statements in the Government's possession. 18 U.S.C. § 3500(b) (Westlaw through P.L. 119-18); see also id. § 3500(e) (defining "statement" for purposes of Section 3500). Prior to direct examination, however, the Act does not require disclosure of any Government witness's prior statements, to the extent those statements are not subject to mandated production under Brady. Id. § 3500(a); see also Coppa, 267 F.3d at 145-46 (explaining overlap of obligations under Brady and the Jencks Act).

Defendants request that the Court now order the disclosure of (1) evidence that Defendants may use to impeach Government witnesses to show bias or interest, i.e., Giglio material (Bautista Mem. at 13-14); (2) material that the Government is required to disclose under Section 3500, i.e., statements or reports made by Government witnesses or prospective witnesses (Bautista Mem. at 26-27); (3) any co-conspirator statements that the Government intends to introduce at trial (id. at 14-15); and (4) all material that the Government is required to produce under Brady and its progeny, including Kyles v. Whitley, 514 U.S. 419 (1995) (Bautista Mem. at 15), with a specific request in Mr. Bautista's reply briefing for "notes, reports, or writings" pertinent to two unspecified reports to law enforcement that Mr. Bautista asserts "provided information that was inconsistent with the [G]overnment's theory of the case and therefore must be contradictory to statements of other Government witnesses" (Bautista Reply at 4).

The Government asserts that there is no basis to order immediate disclosure of Giglio or Jencks Act material, particularly given that the Jencks Act prohibits the compelled pretrial disclosure of witness statements, and, in any case, the Government is willing "to engage with the defense on a mutually agreeable schedule for such disclosure in advance of trial which is still more than six months away." (Gov't Mem. at 9-10.) The Government also represents that it has produced all materials discoverable under Rule 16, including known statements of the Defendants, as well as all material that it is obliged to produce pursuant to Brady and its progeny. (Gov't Mem. at 9, 11-12 (stating that "[t]he Government is well aware of its obligations under Brady")); see also discussion supra p. 7 (listing all discovery that the Government asserts it has already produced). With respect to the two reports referenced in Mr. Bautista's reply briefing, the Government asserts that it "is not certain of which two (or more) reports" to which Mr. Bautista refers, that the disclosure request is a procedurally improper request for discovery, and that the parties have not discussed the issue. (Docket entry no. 78 ("Gov't Sur-Reply") at 1.) The Government therefore requests that the Court deny the report-related disclosure request and allow the parties to revisit the issue with the Court if, after a good faith effort to resolve by agreement the issue, the parties cannot address it themselves. (Id. at 1-2.)

In view of the Government's good faith representations that it has complied, and will continue to comply, with its obligations under Brady and Rule 16, along with its representations that it will disclose materials under Giglio and the Jencks Act according to the respective timelines required for such disclosures and, if possible, pursuant to a mutually agreeable schedule, the Court finds no basis to order compelled production of any of the foregoing materials at this time. See Rodriguez, 2020 WL 5819503, at *10 ("Courts in this

Circuit have repeatedly declined to issue pretrial discovery orders pertaining to <u>Brady</u> and <u>Giglio</u> material, upon a good faith representation by the government that it has complied—and will continue to comply—with its disclosure obligations." (gathering cases)); <u>United States v. Battaglia</u>, No. S9 05-CR-774-KMW, 2008 WL 144826, at *2 (S.D.N.Y. Jan. 15, 2008) ("The Jencks Act requires disclosure of a testifying witness's prior statements only after direct examination of that witness, 18 U.S.C. § 3500(a), and the Court may not otherwise compel the early disclosure of such material over a party's objections."). These requests are accordingly also denied without prejudice to renewal, should more concrete and particularized disputes regarding disclosure arise.

The parties are, however, directed to meet and confer regarding certain report-related disclosures requested in Mr. Bautista's reply briefing, and to file a letter by September 5, 2025, informing the Court as to whether the parties have been able to resolve the issue by agreement, or whether further intervention by the Court is necessary.

<u>Striking Portions of the Indictment as Surplusage – Federal Rule of Criminal Procedure 7(d)</u>

Defendants seek to have the following portions of the Superseding Indictment stricken as surplusage: (1) Paragraph 5, the charged "Means and Methods of Enterprise"; (2) Paragraphs 6 and 7, which describe the charged "Racketeering Conspiracy"; and (3) Paragraphs 8 through 10, which set forth notice of a special sentencing factor, namely, conspiracy to distribute narcotics in violation of 21 U.S.C. sections 846 and 841(b)(1)(A). (Bautista Mem. at 16.)

Federal Rule of Criminal Procedure 7(d) provides that, upon motion of the defendant, "the court may strike surplusage from the indictment or information." Fed. R. Crim.

P. 7(d).  Motions to strike surplusage are, however, subject to an "exacting standard," and will be granted only where the challenged material is "not relevant to the crime charged <u>and</u> [is] inflammatory and prejudicial."  <u>United States v. Scarpa</u>, 913 F.2d 993, 1013 (2d Cir. 1990) (emphasis added) (internal quotation marks and citations omitted).  "If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."  <u>Id.</u> (internal quotation marks and citation omitted).  In racketeering cases, "courts have refused to strike allegations of organized crime connections that serve to identify the 'enterprise' and the means by which its members and associates conduct various criminal activities."  <u>Id.</u> (internal quotation marks amended and citations omitted).

The first two portions of the Superseding Indictment that Defendants seek to have stricken are clearly relevant to the racketeering conspiracy charged in Count One, as those paragraphs describe the purpose of and means by which the charged enterprise is alleged to have operated.  <u>See id.</u>  The third portion of the Superseding Indictment at issue sets forth a special sentencing factor "rooted" in 18 U.S.C. section 1963(a), which provides for enhanced penalties for racketeering conspiracy convictions "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment[.]"  <u>United States v. Torres</u>, 124 F.4th 84, 102 (2d Cir. 2024) (internal quotation marks omitted) (quoting 18 U.S.C. § 1963(a)).  Because a jury must find that the charged special sentencing factor—a narcotics conspiracy— was included in the charged pattern of racketeering activity in order for Defendants to be subject to the relevant enhanced penalties, <u>see</u> <u>Torres</u> at 102-103; <u>accord</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), this portion of the Superseding Indictment is also clearly relevant to the racketeering conspiracy charged in Count One, and the notice was properly included in the Indictment.  The motion to strike is, accordingly, denied in its entirety.

Severance of Counts and Defendants – Federal Rule of Criminal Procedure 8

    Rule 8 of the Federal Rules of Criminal Procedure provides for joinder of offenses in an indictment where the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan[,]" Fed. R. Crim. P. 8(a), and joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses[,]" id. 8(b).  Under Rule 14, the court "may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if "the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government[.]"  Fed. R. Crim. P. 14(a).  There is a well-established preference that defendants who are indicted together should be tried together, particularly "where, as here, the defendants are alleged to have participated in a common plan or scheme."  United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998) (citations omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.").

    Mr. Bautista argues that severance is warranted in the instant case for three reasons: (1) he intends to present, through his own testimony or through the testimony of other witnesses, "exculpatory statements that are inculpatory of other defendants charged in the Indictment[,]" as well as "statements made by various co-defendants which support that while numerous co-defendants were or may have been engaged in the conspiracy, Mr. Bautista did not participate in the charged conspiracy[,]" all of which could run afoul of the Sixth Amendment

right to confrontation, as enunciated in <u>Bruton v. United States</u>, 391 U.S. 123 (1968); (2) the Government could potentially seek to introduce statements of co-defendants, which pose a risk of violating the Sixth Amendment right to confrontation, as enunciated in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004); and (3) failure to sever could lead to "spillover prejudice" to Mr. Bautista because the Government will offer evidence applicable to Count Two of the Superseding Indictment, which charges only Mr. Altorei with maiming, attempted murder, and assault in aid of racketeering.  (Bautista Mem. at 17-24.)  Mr. Altorei joins generally in seeking severance, again without proffering individualized arguments.

Defendants' request for severance is, at this time, largely speculative and not ripe for adjudication.  "Under <u>Bruton</u> . . . and <u>Crawford</u> . . ., co-defendant statements naming a defendant are generally inadmissible where the defendant has no opportunity to cross-examine." <u>United States v. Nunez</u>, No. 22-CR-293-JPO, 2025 WL 547805, at *4 (S.D.N.Y. Feb. 18, 2025). "This constitutional problem may be remedied, however, by a combination of appropriate redactions and limiting instructions, as long as the redacted statements do not expressly implicate the defendant."  <u>Id.</u> (citing <u>Samia v. United States</u>, 599 U.S. 635, 655 (2023)).

Here, neither of the moving Defendants has proffered exemplars of the extrajudicial statements that they intend to introduce, nor, as the Government observes, have the Defendants proffered any theory of admissibility as to these statements, which are ostensibly hearsay.  The Court therefore has no ability to ascertain the extent to which, if at all, any such statements pose an issue under <u>Bruton</u>, nor whether redaction or some other curing method could be employed to mitigate <u>Bruton</u> concerns.  Moreover, to the extent that any of the witnesses testifying, such as Mr. Bautista, seek to introduce their *own* extrajudicial statements, there is

clearly no violation of the principles enunciated in <u>Bruton</u> and <u>Crawford</u>, because those witnesses will be subject to cross-examination.  For all of these reasons, the Court is also not in a position to make evidentiary determinations based on Mr. Bautista's arguments that the Government *could* or *might* seek to introduce extrajudicial statements that pose an issue under <u>Bruton</u> or <u>Crawford</u>.  <u>See, e.g.</u>, <u>Nunez</u>, 2025 WL 547805, at *5 ("The Government is correct [that any <u>Bruton</u> issue is not ripe for decision] because it may not offer any <u>Bruton</u> statements, and because such statements might be cured through appropriate redactions and limiting instructions.")

> As to Mr. Bautista's third and final argument, neither Mr. Bautista nor Mr. Altorei has sufficiently demonstrated a risk of "spillover prejudice," given that Counts Two through Four of the Superseding Indictment each concern acts that the Government has included as predicate racketeering activity of the racketeering conspiracy charged in Count One as against all Defendants.  Accordingly, a common body of evidence would be used against each of the Defendants, regardless of whether the Defendants were tried together or separately and notwithstanding the fact that each Defendant is not charged in every count of the Superseding Indictment.  <u>See</u> <u>United States v. Rosa</u>, 11 F.3d 315, 341 (2d Cir. 1993) ("Evidence at the joint trial of alleged co-conspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial[.]").  This fact also weighs heavily in favor of a joint trial.  <u>See, e.g.</u>, <u>Richardson v. Marsh</u>, 481 U.S. 200, 210 (1987) (explaining that joint trials promote the efficiency and fairness of the criminal justice system by avoiding lengthy and repetitious trials that largely rely on the same evidence, and serve the interest of justice by avoiding inconsistent

verdicts and enabling more accurate assessment of relative culpability); United States v. Feyrer, 333 F.3d 110, 114-15 (2d Cir. 2003) (same).

        In sum, Defendants have not proffered ripe nor sufficiently compelling reasons weighing in favor of severance.  The request for severance is therefore denied without prejudice to renewal in connection with motion in limine practice or at such other time hereafter as is appropriate.

Lay Witness Testimony – Federal Rule of Evidence 701

        Finally, Defendants move to preclude or otherwise limit the use of lay witness identification testimony related to surveillance video of the charged January 2022 shooting. (Bautista Mem. at 24-26.)  Federal Rule of Evidence 701 provides that non-expert witnesses may testify in the form of an opinion so long as the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702[, Testimony by Expert Witnesses]."  Fed. R. Evid. 701.  As the Government notes, the Second Circuit has repeatedly allowed in-court identification of a defendant shown in surveillance video by a lay witness where the lay witness is able to rely on observations, based on their first-hand familiarity with the defendant's appearance, that are not "fully accessible to the jury," such as the defendant's typical manner of dress, gait, build, and so forth.  See, e.g., United States v. Edwards, No. 23-7200-CR, 2025 WL 25658, at *4 (2d Cir. Jan. 3, 2025) (citing United States v. Walker, 974 F.3d 193, 205 (2d Cir. 2020)); United States v. Arroyo, 600 F. App'x 11, 15 (2d Cir. 2015).  The Government asserts that it will proffer lay witness testimony for similarly proper purposes by "multiple witnesses, very familiar with Bautista from

longstanding, personal relationships" (Gov't Mem. at 19), rather than, e.g., the type of law enforcement witness testimony to which Mr. Bautista principally objects (Bautista Mem. at 24-25).

In any event, this request is again premature and will be better addressed closer to trial, e.g., in connection with motion in limine practice, when both the proffered lay witness testimony and the surveillance video itself are in the record before the Court.  Paredes, 176 F. Supp. 2d at 181.  The Motion is therefore denied to the extent it seeks preclusion or other limitation of the use of lay witness testimony pertaining to the surveillance video.

CONCLUSION

For the foregoing reasons, Mr. Altorei's application to join Mr. Bautista's Motion is granted, and Mr. Bautista's Motion is denied in its entirety.  This Memorandum Opinion and Order resolves docket entry numbers 69, 72, and 76.

By **September 5, 2025**, the Government is directed to file a joint status letter on behalf of the parties, informing the Court as to whether the parties have been able to resolve by agreement the issue pertaining to Mr. Bautista's request for certain report-related disclosures, or whether further intervention from the Court is necessary.

The final pretrial conference in this case is scheduled for **January 30, 2026**.

SO ORDERED.

Dated: New York, New York
       August 15, 2025


/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge